ELECTRONICALLY FILED
Pope County Circuit Court
Rachel Oertling, Circuit Clerk
2024-Jun-12 13:58:13
58CV-24-343
C05D03 : 44 Pages

## IN THE CIRCUIT COURT OF POPE COUNTY, ARKANSAS
## DIVISION ____

**DENALI WATER SOLUTIONS, LLC**                                    **PLAINTIFF**

**VS.**                          **CASE NO. 58CV-24-_____**

**BENJAMIN C. FLAHART**                                          **DEFENDANT**

### COMPLAINT

Plaintiff, by its attorneys, John R. Peel of the Peel Law Firm, P.A., and Michael B. Heister of Quattlebaum, Grooms & Tull PLLC, and for its Complaint herein, states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff is a Delaware Limited Liability Company in good standing and registered to conduct business within the state of Arkansas, having its principal office in Pope County, Arkansas.

2.      Defendant is an individual and a resident of Lancaster County, Pennsylvania, who entered into one or more contracts with Plaintiff pursuant to which Defendant consented to the applicability of the laws of the state of Arkansas governing the same and which set venue in the state courts of Arkansas.

3.      This Court has personal jurisdiction pursuant Ark. Code Ann. § 16-4-101.

1

4.    This Court has subject matter jurisdiction over this case pursuant Amendment 80 of the Arkansas Constitution and Ark. Code Ann. § 16-13-201.

5.    Venue is likewise proper in this Court per Ark. Code Ann. § 16-60-101.

### FACTS GIVING RISE TO THE LITIGATION

6.    Plaintiff is engaged in the business of managing, transporting, and final destination (recycling or disposal) of non-hazardous industrial, commercial, and municipal residuals.

7.    On or about August 15, 2020, Defendant entered into a Farm AD Feed Stock Agreement ("Farm Agreement") with Plaintiff pursuant to which Defendant was to provide facility storage for non-hazardous municipal and industrial water and wastewater residuals on behalf of Plaintiff.  A copy of the Farm Agreement is attached hereto as Exhibit "1" and is incorporated herein by reference.

8.    On or about February 3, 2022, Defendant entered into a Mutual Confidentiality Agreement ("Confidentiality Agreement") with Plaintiff pursuant to which Defendant was to maintain as confidential certain information of Plaintiff in accordance with the terms thereof. A copy of the Confidentiality Agreement is attached hereto as Exhibit "2" and is incorporated herein by reference.

9.    On or about May 24, 2022, Defendant entered into a Subcontractor Agreement with Plaintiff pursuant to which Marlin Nolt Trucking, LLC, an entity owned by, controlled by, or otherwise affiliated with Defendant was to provide to Plaintiff certain services and equipment in accordance with the terms thereof. A copy of the Subcontractor Agreement is attached hereto as Exhibit "3" and is incorporated herein by reference.

10.    On or about February 6, 2023, Defendant and any entity under his control entered into an "Agreement" (the "2023 Agreement") to provide contractor services to or on behalf of Plaintiff such as providing and operating heavy equipment, vehicles, and working to facilitate the transportation, delivery and/or management of waste material. A copy of the 2023 Agreement is attached hereto as Exhibit "4" and is incorporated herein by reference.

11.    The 2023 Agreement incorporates the terms of the Farm Agreement, Confidentiality Agreement, and Subcontractor Agreement as explained in the 2023 Agreement (all of these contract to be referred to collectively as the "Agreements" unless otherwise noted).

12.    In the regular course and scope of performing the contractual duties set forth in the Agreements referenced herein as Exhibits "1" through "4", Defendant had regular access to confidential information of the Plaintiff, to include customer information, pricing information, and related confidential information.

13.    In the regular course and scope of the contractual duties set forth in the Agreements referenced herein as Exhibits "1" through "4", the Defendant developed relationships with subcontractors and customers of Plaintiff.

14.    The terms of the Agreements referenced herein as Exhibits "1" through "4" required that Defendant maintain the confidentiality of Plaintiff's business activities, including pricing and other customer information.

15.    Under the terms of the Farm Agreement and the 2023 Agreement, Defendant agreed that for a period of two years following the termination of said

3

agreements, Defendant would not take part in any activity prohibited by the Farm Agreement or the 2023 Agreement, including the requirement that Defendant shall not directly or indirectly, own, be employed by, manage, operate, control, participate in the ownership, management, operation or control of, or be connected with or have any interest in, any person, firm, corporation, partnership, trust or other business or entity (whether as a stockholder, officer, director, employee, agent, security holder, creditor, independent owner, consultant, or otherwise) that solicits or engages in any business activity with any "Restricted Customer" in any manner which is the same as or substantially similar to the services provided by Plaintiff to its customers.

16.    A Restricted Customer is defined in the Farm Agreement and the 2023 Agreement as any current or previous customer of Plaintiff or for which Plaintiff, or any of its affiliates, that it provides services to, including but not limited to transportation, management, and disposal of residual services.

17.    The 2023 Agreement further contains non-circumvention provisions pursuant to which Defendant agreed to:

       a.    Not circumvent Plaintiff and to maintain full disclosure with regard to any and all communications and correspondence, in particular with regards to contract negotiations, including all discussions regarding fees, with its customers.

       b.    Not circumvent, avoid, bypass, or obviate, directly or indirectly, the intent of the 2023 Agreement through any transaction, transfer, pledge, agreement, recapitalization, loan, lease, assignment or otherwise.

c.      Not contact, individually or through any affiliates, whether directly or indirectly, parties first introduced to Defendant by Plaintiff or contact or negotiate with any confidential source, except through Plaintiff or with the expressed written consent of Plaintiff as to each such contact.

18.    Defendant's first notice of termination of the Farm Agreement and the 2023 Agreement was provided by letter dated May 31, 2024. A copy of the notice is attached as Exhibit "5" and is incorporated by reference.

19.    At all times prior thereto the Agreements including the Farm Agreement and the 2023 Agreement were in full force and effect.

20.    Within the last 90 days preceding the filing of this Complaint, the Defendant violated the terms and conditions of the Agreements including the Farm Agreement and the 2023 Agreement in multiple respects.

21.    Defendant has engaged in activity competitive with Plaintiff by engaging in hauling, storing and/or managing waste material, or otherwise brokering the provision of such activities for Restricted Customers during the restricted period and within the restricted territory as such terms are defined within the Farm Agreement and 2023 the Agreement.

22.    Defendant has solicited or assisted others in the solicitation of Restricted Customers of Plaintiff.

23.    Defendant has solicited, circumvented, and otherwise interfered with the business relationships between Plaintiff and its Restricted Customers, including prospective business, and has otherwise engaged in prohibited activities as described in

the Agreements including the Farm Agreement and the 2023 Agreement that are competitive with Plaintiff.

## BREACH OF CONTRACT

24.    Plaintiff incorporates paragraphs 1-23 as if fully set out herein word for word.

25.    The actions of Defendant violate the terms of the Agreements and thereby entitle Plaintiff to declare Defendant in breach and to seek and recover damages under the terms thereof.

26.    Plaintiff has a legitimate interest in protecting its customer lists, customer information/pricing, and in maintaining its customer accounts and relationships.

27.   The terms of the Agreements including the Farm Agreement and the 2023 Agreement are just and reasonable, and the enforcement of same is equitable in a court of law.

28.    Plaintiff performed its obligations under the Agreements including the Farm Agreement and the 2023 Agreement and no breach by Defendant is justified.

29.    Plaintiff has demanded that Defendant adhere to the terms of the 2023 Agreement, but Defendant has failed and refused to comply with such terms.  A copy of such written demand is attached as Exhibit "6" and is incorporated herein by reference.

30.    This is a Complaint to enforce specific performance of contracts. Plaintiff has no adequate remedy at law other than requiring Defendants to perform their obligations under the Agreements since potential future harm cannot be measured.

31.    Plaintiff is entitled to recover all damages resulting from Defendant's breach of the Agreements including the Farm Agreement and the 2023 Agreement to include lost

profits, consequential and incidental damages, its attorney's fees and all costs and expenses of or related to this action.

### REQUEST FOR TEMPORARY AND PERMANENT RESTRAINING ORDER

32.    Plaintiff incorporates Paragraphs 1-31 as if fully set out herein word for word.

33.    In order for a non-compete agreement to be valid, three requirements must be met: 1) the covenantee must have a valid interest to protect; 2) the geographical restriction must not be overly broad; and 3) a reasonable time limit must be imposed. *Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76, 81 (2008).

34.    A business's customer list, customer information, and the relationship with its customers are legitimate interests to protect. *Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76, 82 (2008).

35.    A two-year time limit for non-competition and non-solicitation is not unreasonable. Ark. Code Ann. § 4-75-101.

36.   The terms of the Agreements including the Farm Agreement and the 2023 Agreement meet all applicable legal requirements under Arkansas law.

37.    The terms of the Agreements are just and reasonable and their enforcement is equitable in a court of law.

38.    The actions of Defendant are clearly violative of enforceable contracts validly executed by the parties hereto and Plaintiff has established a likelihood of success on the merits of its suit to enforce the obligations of Defendant under the Agreements including the Farm Agreement and the 2023 Agreement.

7

39.    The terms of the Agreements including the Farm Agreement and the 2023 Agreement specifically afford to Plaintiff the right to an injunction as against further violations of the said agreements as well as all other equitable relief.

40.    Plaintiff has made demand upon Defendant which has been refused and requiring further notice would be ineffectual and redundant.

41.    Absent the entry of a temporary and permanent restraining order, Plaintiff will suffer immediate and irreparable injury.

42.    Plaintiff requests a temporary and permanent restraining order pursuant to Rule 65 of the Arkansas Rules of Civil Procedure prohibiting Defendant from using or disclosing customer lists, customer information, and other such confidential information; from soliciting or aiding anyone in the solicitation of Plaintiff's Restricted Customers or otherwise interfering with the business relationships between Plaintiff and its Restricted Customers; or from engaging in activities that are competitive with Plaintiff and prohibited under the terms Agreements including the Feed Stock Agreement and the 2023 Agreement.

43.    Plaintiff consents to the posting of such bond as may be required.

**WHEREFORE**, Plaintiff requests the following relief:

1.    A temporary and permanent restraining order prohibiting Defendant from using or disclosing Plaintiff's customer lists and customer information, soliciting or aiding any other entity in the solicitation of Restricted Customers, or otherwise interfering in the business relationship between Plaintiff and its Restricted Customers.

8

2.    A temporary and permanent restraining order prohibiting Defendants from engaging in activity that is competitive with the Plaintiff and prohibited under the terms of the Feed Stock Agreement and the 2023 Agreement.

3.    A final Order granting the relief requested hereinabove for a two-year term from the termination of the Farm Agreement and the 2023 Agreement, inclusive of any applicable tolling period.

4.    A finding of Defendant's breach and an order compelling specific performance with the terms of the Agreements as well as a determination of all lost profits and any other available consequential or incidental damages incurred by Plaintiff relating to the breach of Defendant.

5.    A reasonable attorney's fee and all costs incurred herein.

6.    Any and all other and proper relief.

                    **DENALI WATER SOLUTIONS, LLC**
                    **PLAINTIFF**

**BY:** _____

                    **JOHN R. PEEL, ABN 94-146**
                    **PEEL LAW FIRM, P.A.**
                    **120 SOUTH GLENWOOD**
                    **P.O. BOX 986**
                    **RUSSELLVILLE, AR 72811**
                    **(479) 968-4000 - TELEPHONE**
                    **(479) 968-4388 - FACSIMILE**
                    **JRP@PEELLAW.COM**

                    **MICHAEL B. HEISTER, ABN 2002091**
                    **QUATTLEBAUM, GROOMS & TULL**
                    **PLLC**
                    **111 CENTER STREET, SUITE 1900**
                    **LITTLE ROCK, AR 72201**
                    **(501) 379-1700 - TELEPHONE**
                    **(501) 379-1701 - FACSIMILE**
                    **MHEISTER@QGTLAW.COM**

                    **ATTORNEY FOR PLAINTIFF**



3308 Bernice Avenue
Russellville, AR 72802
PO Box 3036 • Russellville, AR 72811
Phone: 479-498-0500

### Farm AD Feed Stock AGREEMENT

This Farm AD Feed Stock Agreement ("Agreement") is entered and executed on and as of the _15th_ day of _August 2020_, by and between Denali Water Solutions, LLC ("Denali"), a Delaware limited liability company, with offices located in Russellville, Arkansas, and _Benjamin Flahert_ ("Owner"), whose address is _17k Russellville Rd Quarryville_ Denali and Owner herein referred to jointly as a "Party" or the "Parties."

WHEREAS, Denali is engaged in the business of transporting, managing and disposing of non-hazardous, nutrient-rich, eco-friendly municipal and industrial water and wastewater residuals ("Residuals"); and

WHEREAS, Denali desires to utilize the Owner's Farm AD Facility to store and process Residuals for beneficial reuse; and

WHEREAS, Owner desires to provide the use of said property as described herein to Denali for the storage and processing of the Residuals.

For and in consideration of the mutual promises and agreements herein, Owner and Denali agree as follows:

1) **Term and Control:** Denali hereby engages Owner to use Owner's AD Facility for the storage and processing of the Residuals and Owner hereby agrees to provide use of property described herein, in all cases pursuant to the terms and conditions of this Agreement. This Agreement shall be ongoing unless or until either party provides 30-day written notice to the other party of its intent to terminate this Agreement.

2) **Parties shall be responsible for the following:**

   (a) **Property:** Owner agrees to accept Residuals delivered to the property as described below:

   _785 Firetower Rd, Celora, MD_____ [property address or description]

   (b) **Operation:** Owner shall freely, and without control by or input from Denali, maintain property in full compliance with all state and local laws and regulations except where maintenance is directly associated with the activities of beneficial reuse and/or storage of Residuals. .

   (c) **Operating Expenses:** Owner shall pay all normal expenses for its property including, but

**EXHIBIT**

**1**



3308 Bernice Avenue
Russellville, AR 72802
PO Box 3036 • Russellville, AR 72811
Phone: 479-498-0500

not limited to, federal, state and local taxes.

    (d) **Violations, Fines and Forfeitures:** Owner shall pay all fines or forfeitures where the violation results from the acts or omissions of the Owner and shall hold Denali wholly harmless.

**3) Compensation:**
    a. **Deductions from Payment on Settlement:** Situations and related expenses may arise that requires Denali to perform services outside the scope of normal operations. Owner acknowledges this and authorizes Denali to deduct these expenses from amounts due to Owner from Denali. In this case, Denali shall provide Owner an itemization of the expenses before any deduction occurs.

**4) Indemnities:**
    a. **Indemnification by Owner:** Owner shall fully and completely reimburse, indemnify and hold Denali wholly harmless from and against any and all loss, liability, obligation, damage, or expense incurred by Denali resulting, in any manner, from any wrong doing, whether willful or accidental, by Owner, of any of the terms of this Agreement any unauthorized or unlawful acts by Owner or its agents, employees or helpers. The Parties specifically identify, with respect to this intended and agreed to indemnification, that Owner is knowledgeable of the potential liability that is released and that the Owner is benefiting from the Residual program which may lead to the potential liability that is released; and that this liability release and indemnification was fairly and freely entered.

    b. **Indemnification by Denali:** Denali shall fully and completely reimburse, indemnify and hold Owner wholly harmless from and against any and all loss, liability, obligation, damage, or expense incurred by Owner resulting, in any manner, from any wrong doing, whether willful or accidental, by Denali of any of the terms of this Agreement any unauthorized or unlawful acts by Denali or its agents, employees or helpers. The Parties specifically identify, with respect to this intended and agreed to indemnification; and that this release and indemnification was fairly and freely entered.

    c. **Consequential Damages:** In no event shall either Party be liable to the other for any indirect, special, or consequential damages, regardless of the cause.

**5) Confidentiality:** In connection with the use of property hereunder, the Owner may be exposed to confidential and proprietary information of Denali, whether or not so identified (including, without limitation, this Agreement). Owner shall not in any manner disclose to any person, partnership, firm, corporation or other entity any information concerning any



3308 Bernice Avenue
Russellville, AR 72802
PO Box 3036 • Russellville, AR 72811
Phone: 479-498-0500

matters affecting or relating to the business of Denali including, but not limited to, customers or pricing for a two (2) year period following the termination of this Agreement. This covenant shall remain in effect following termination of this Agreement. Owner shall not, without the prior written consent of Denali, use Denali's name in any advertising or promotional literature or publish any articles relating to Denali, this Agreement or the services hereunder.

6) **Non-competition:** Owner agrees and covenants that it will not, at any time during the term of this Agreement and for a two (2) year period following the date of the termination of this Agreement, directly or indirectly, own, be employed by, manage, operate, control, participate in the ownership, management, operation or control of, or be connected with or have any interest in, any person, firm, corporation, partnership, trust or other business or entity (whether as a stockholder, officer, director, employee, agent, security holder, creditor, independent owner, consultant, or otherwise) that solicits or engages in any business activity with any "Restricted Customer", as hereinafter defined, in any manner which is the same as or substantially similar to the services provided by Denali to its customers or clients. For this purpose, the term "Restricted Customer" shall mean any current or previous customer of Denali's for which Denali, or any of its affiliates, provides services to, including but not limited to transportation, management, and disposal of Residuals services. If any of the provisions of this paragraph is held to be unenforceable because of the scope, duration or area of its applicability, the court or arbitrator making such determination shall have the power to modify such scope, duration or area so that this covenant shall remain enforceable and such provision shall then be applicable in modified form. Owner understands and agrees that any breach or violation of this non-competition clause will cause irreparable harm to Denali which may not be adequately remedied by an award for monetary damages, and, accordingly, in the event of any such breach or violation, Denali shall have, in addition to any other remedies at law, the right to an injunction, specific performance or other equitable remedies to prevent violation of Owner's obligation hereunder. If Owner breaches this non-competition covenant and legal action is initiated by Denali to enforce this Agreement or to seek damages for Owner's violation, Denali shall be entitled to recover from Owner all costs and expenses, including reasonable attorneys' fees, incurred therein by Denali. In the event Owner shall violate any non-competition provision of this Agreement as to which there is a specific time period during which Owner is prohibited from taking certain actions or from engaging in certain activities, as set forth in such provision, then such violation shall toll the running of such time period from the date of such violation until such violation shall cease and shall extend the time period set for in this Agreement so long as Owner remains in violation.

7) **Independent Owner Status:** It is expressly agreed that the relationship of Owner to Denali pursuant to this Agreement shall be that of an independent contractor. It is acknowledged by the Parties that neither the Owner, nor any of its employees shall be deemed to be agents, servants, or employees of Denali for any purpose whatsoever.



3308 Bernice Avenue
Russellville, AR 72802
PO Box 3036 • Russellville, AR 72811
Phone: 479-498-0500

8) **<u>Choice of Law, Venue, Saving Clause:</u>** This Agreement supersedes all previous agreement between Denali and Owner, if any, and shall be deemed to have been entered at Denali principal place of business in Russellville, Arkansas. This Agreement shall be governed by the laws of the State of Arkansas.  If any provision of this Agreement (including any Exhibits) declared invalid, the remaining provisions of this Agreement not inconsistent therewith sha remain in full force and effect.

9) **<u>Entire Agreement, Modification, Waiver:</u>** This Agreement represents the entire Agreemen between the Parties. The Agreement may not be modified, amended, changed, or supplemented in any way except by written Agreement signed by both parties.  The waive by either party of a breach or violation of any provision of this Agreement shall not constitut a waiver of any subsequent breach or other breach or violation.  This Agreement supersede and/or replaces any prior contracts or agreements between the Parties.

*{Signatures on following page}*



3308 Bernice Avenue
Russellville, AR 72802
PO Box 3036 • Russellville, AR 72811
Phone: 479-498-0500

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date written above, said Agreement shall be binding upon both Parties and shall remain in full force and effect unless and until canceled according to the terms of this Agreement.

**Owner**

By: _Bjin CFlUA_

Name: _Benjamin C Flahart_

Title: _Pres_

Address: _176 Puseyville Rd_
_Quarryville PA 17566_

**Denali Water Solutions, LLC**

By: _Charlie Golden_

Name: ___Charlie Golden___

Title: ___GM, Mid-Atlantic___

Address:      3308 Bernice Ave.

Russellville, AR 72802

Owner of farm or company entity, in his individual capacity, agrees to be bound by Section 6 Non-competition:

By: _Bjin C Flahart_

Name: _Benjamin C. Flahart_

Address: _176 Puseyville Rd_
_Quarryville, PA 17566_

5

## MUTUAL CONFIDENTIALITY AGREEMENT

This MUTUAL CONFIDENTIALITY AGREEMENT ("Agreement") is entered into effective this _3_ day of _February_, 2022 by and between **Denali Water Solutions, LLC.** ("Denali"), and _Benjamin C. Flahert_ ("_____"). Each of the above sometimes referred to hereinafter as a "Party" and collectively as the "Parties."

WHEREAS, each Party is interested in disclosing certain of its Confidential Information (as defined herein) to review and evaluate the possibility of entering into a business arrangement (the "Transaction").

WHEREAS, as a condition to the delivery of the Confidential Information, each Party (in such capacity, the "Disclosing Party") desires that the other Party (in such capacity, "Recipient") maintain the confidentiality of the Confidential Information and use the same only for the purposes contemplated by this Agreement.

NOW, THEREFORE, for and in consideration of the premises and the agreements of the parties set forth below, the Parties agree as follows:

1.    (a)    Recipient agrees to maintain the confidentiality of the Confidential Information and shall not, directly or indirectly, whether before or after the date hereof, transfer or disclose orally, in writing, electronically or in any other manner any Confidential Information to any person or entity without the prior written approval of the Disclosing Party; provided, that any such information may be disclosed only to the limited group of Recipient's agents, outside advisors and attorneys (such persons hereinafter collectively referred to as "Representatives"), who are actually engaged in and need to know the Confidential Information for the purpose of evaluating the Transaction, who have been informed of the confidential nature of the Confidential Information, and who have been advised by and agree with Recipient that such information is to be kept confidential and shall not be used for any purpose other than the evaluation of the Transaction. Recipient agrees that it will be responsible for any breach of this Agreement by any of its Representatives.

(b)    Recipient agrees not to (i) use any Confidential Information for any purpose other than for the purpose of evaluating the Transaction or otherwise entering into a business relationship with the Disclosing Party, (ii) except for Recipient's internal use or in connection with providing such information to its Representatives in accordance with Paragraph 1(a) above, copy or duplicate the Confidential Information without the prior written approval of the Disclosing Party, or (iii) take any other action with respect to the Confidential Information that would be inconsistent with the confidential and proprietary nature of such information or the restrictions set forth herein.

(c)    Without the prior written consent of the Disclosing Party, Recipient will not disclose (i) the fact that the Confidential Information has been made available to Recipient or that Recipient has inspected any portion of the Confidential Information, (ii) the fact that any discussions or negotiations are taking place concerning the possible Transaction, or (iii) any of the terms, conditions or other facts with respect to the possible Transaction, including the status thereof.

**EXHIBIT**
**2**

1

2.      As used herein, "Confidential Information" means, without limitation, all confidential and proprietary information, financial data, research, investment strategy and considerations, business plans, know-how and other trade secrets relating to the Disclosing Party or the Transaction furnished or made available by the Disclosing Party or its representatives to Recipient or its Representatives, whether in oral, written, electronic or machine-readable or other form, including, without limitation, information concerning the Disclosing Party, the possible Transaction, financial results, projections and forecasts, costs, markets, sales, past, current or prospective customer names, supplier names, products, intellectual property, business relationships, key personnel, operational methods or other business affairs and methods and plans for future developments, as well as all documents, notes, analyses, studies and other materials produced by Recipient or its Representatives incorporating or otherwise derived from Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include information (i) in the public domain (other than as a result of a breach of this Agreement), (ii) independently developed by Recipient without reference to the Confidential Information or (iii) known through a party other than the Disclosing Party, which party has no duty of confidentiality to the Disclosing Party (whether contractual, fiduciary or legal). The Confidential Information shall remain the property of the Disclosing Party.

3.      The term of this Agreement shall commence on the date first written above and shall expire twenty-four (24) months from such date.

4.      If Recipient or its Representatives is required by law to disclose any Confidential Information or either the fact that discussions are taking place regarding the Transaction or any of the terms, conditions or other facts with respect to such possible Transaction, including the status thereof, the Disclosing Party agrees that Recipient and its Representatives may do so without liability; provided Recipient (i) provides the Disclosing Party with prompt written notice thereof prior to any such disclosure to the extent practicable, (ii) cooperates with the Disclosing Party at its expense in any attempts it may make to seek a protective order or other appropriate assurance that confidential treatment will be afforded the Confidential Information and (iii) if no such order or other remedy is not obtained, then Recipient will furnish only that portion of the Confidential Information which Recipient is advised by legal counsel is legally required and will exercise all reasonable efforts at the Disclosing Party's expense to obtain assurance that confidential treatment will be accorded such Confidential Information.

5.      Recipient acknowledges and agrees the Disclosing Party may suffer irreparable injury not compensable by money damages and therefore may not have an adequate remedy at law in the event of breach of this Agreement by Recipient or its Representatives. Accordingly, the Disclosing Party shall be entitled to specific performance and injunctive or other equitable relief to prevent or curtail any such breach, threatened or actual, without posting a bond or other security. The foregoing shall not be exclusive, but shall be in addition and without prejudice to such other rights as the Disclosing Party may have at law or in equity.

6.      Following any written request by the Disclosing Party or any of its representatives, Recipient agrees to (and will instruct its Representatives to) (i) promptly re-deliver to the Disclosing Party or destroy all written Confidential Information (including documents

Confidential Information) and (ii) not retain any copies, extracts or other reproductions in whole or in part, or electronic (including computer records) of such written material.

     7.    This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas (without giving effect to principles of conflicts of laws). Any disputes arising out of this Agreement shall be adjudicated exclusively by an appropriate state or federal court sitting in the State of Arkansas.

     8.    The provisions of this Agreement are severable and the unenforceability of any provision of this Agreement shall not affect the enforceability of any other provision hereof. In addition, in the event that any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable as drafted by virtue of the scope, extent or character of any obligation contained herein, the parties acknowledge that it is their intention that such provision shall be construed in a manner designed to effectuate the purposes of such provision to the maximum extent enforceable under applicable law.

     9.    This Agreement in no way constitutes an agreement by the parties, and the parties are under no legal obligation of any kind whatsoever, to consummate a Transaction or to exchange or provide any particular Confidential Information or other information, and the extent of such exchange or availability shall be as agreed upon by the parties.

     10.    This Agreement represents the entire understanding and agreement of the parties hereto and may not be amended except by an instrument in writing signed by or on behalf of the parties hereto. This Agreement supersedes and cancels all prior agreements between the parties hereto, express or implied, relating to the Transaction. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of the non-assigning party. Any purported assignment without such consent shall be void and unenforceable.

     11.    This Agreement may be executed in counterparts, each of which will be deemed an original document, but all of which will constitute a single agreement. Facsimile or PDF signatures will be deemed valid and binding to the same extent as original signatures.

     IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

**DENALI WATER SOLUTIONS, LLC.**

By: _____       By: _____

Name: Michael Stevens           Name: Benjamin C Flahart

Title: VP of Corporate Development   Title: Pres



**SUBCONTRACTOR AGREEMENT**

This Subcontractor Agreement (the "Agreement") is entered into on the 24th day of May_____, 2022, by and between Denali Water Solutions, LLC ("Denali"), a Delaware limited liability company, whose principal address is 3308 Bernice Ave, Russellville, AR 72802 and Marlin Nolt Trucking, LLC_____, a S-Corp._____, whose principal address is 752 Nottingham Road, Peach Bottom, PA 17563_____ ("Contractor").

Denali is engaged in the business of transporting, managing and disposing of municipal biosolids and other residuals ("Material") and desires to retain and engage Contractor as a non-employee independent contractor to safely and efficiently transport, deliver, and/or otherwise manage Material or other services as requested by Denali ("Services") in furtherance of Denali's business; and

Contractor is the owner and operator of certain equipment, vehicles and machinery used in and has experience in the safe and efficient transportation, delivery, and/or management of Material and desires to provide the Services for Denali as a non-employee independent contractor.

For and in consideration of the mutual promises and agreements herein, Contractor and Denali agree as follows for the purpose of being legally bound hereto in all respects:

**1.0    Term and Control.** Denali hereby engages and retains Contractor as a non-employee independent contractor, and Contractor hereby agrees to provide the services and equipment described herein, in all cases pursuant to the terms and conditions of this Agreement, including any assignment, addendum or exhibit ("Scope of Work") agreed to between the parties. This Agreement will take effect on the date listed above and continue in full force and effect through the term of this Agreement and active addendum or exhibit. This Agreement may be terminated by either party with written notice; however, if this Agreement is terminated by Contractor, Contractor shall give Denali written notice a minimum of fourteen (14) days prior to cessation of providing Services, so as to minimize the disruption of Denali's service to its customers.

**1.1    Denali Affiliates.** The Services under this Agreement shall be performed, in certain cases, for one or more entities that are Affiliates with Denali. In the event any Affiliate requires Contractor to perform Services under this Agreement ("Affiliate Services"), Contractor shall perform such Affiliate Services and be bound to the Affiliate as though the Affiliate was Denali. The Affiliate shall be entitled to all rights and privileges, and be solely liable for all commitments and responsibilities held by Contractor, under this Agreement, as such applies to the Affiliate Services. Contractor's agreement to insure, defend, and indemnify Denali pursuant to this Agreement shall extend to both Denali and such Affiliate for purposes of the Affiliate Services. The Affiliate that requests Affiliate Services shall be solely responsible for the liabilities and obligations of Denali set forth in this Agreement. All such liabilities and obligations related to Affiliate Services shall be non-recourse to Denali. Contractor agrees that it shall not have any right to directly or indirectly pursue any claim, proceeding, or suit against Denali or any related entity other than the Affiliate that requested the Affiliate Services and therefore waives and releases any and all rights at law, equity, or otherwise for recovery, claims, demands, actions, and causes of action against Denali related to such Affiliate Services. Contractor agrees that it shall look only to Affiliate regarding any matter related to Affiliate Services.

**2.0    Contractor shall be responsible for the following:**

**2.1    Drivers and Helpers.** Contractor shall select, furnish, train, and supervise at its own expense such qualified Commercial Motor Vehicle ("CMV") licensed drivers, mechanics, and laborers as are necessary to safely and efficiently

1



operate, load and unload, at times specified by Denali's customers, in conformity with the Federal Motor Carrier Safety Regulations, 49 CFR Parts 350-399, and related regulations such as License and Controlled Substances Testing Regulations. This qualification process does not in any way effect, change, or influence the Contractor's status as an independent contractor.

2.2    **Independent Driver Qualifications.** Although Contractor's drivers are not employed by Denali they may be entrusted with Denali Equipment. Therefore, Contractor represents and warrants that all of its drivers currently employed as of the execution of this Agreement and at all times in the future during the term of this Agreement will:

- Maintain a valid Commercial Driver's License (CDL) with applicable endorsements for equipment operated, issued by a US state or territory
- Maintain a valid physical that has been issued by a Federal Motor Safety Carrier Administration (FMCSA) certified driver
- Have no DUI/DWI convictions in the last 5 years
- Have no preventable fatality accidents
- Have no preventable rollover/total loss accidents in the last 3 years
- Comply with all FMSCA requirements
- Notify Denali immediately if the status of any of the above requirements changes

2.3    **Contractor Conduct.** Denali prides itself on providing our customers with first-class professional service and appearance. At all times while Contractor and its drivers are performing work related to Denali, they are required to act, perform, and operate in a professional, business-like manner. If Contractor fails to comply with this standard, Denali reserves the right to terminate this Agreement. Contractor acknowledges time is of the essence in the performance of all Services. Denali may change the schedule of completion or the sequence of Contractor's performance of Services as reasonably necessary, without any cost or consequence to Denali. Contractor warrants to Denali that all Services shall be (i) performed in a good and workmanlike manner; (2) in compliance with all Laws, (iii) free of all liens, and claims; (iv) in conformance with this Agreement; and (v) of good quality and free from faults and defects.

2.4    **Compliance with Law.** Contractor's performance of services under this Agreement shall be in full compliance with all applicable federal, state and local laws, rules and regulations. Contractor agrees that at all times Contractor and its agents and employees shall maintain all proper licenses and insurance required pursuant to applicable local, state and federal law to perform the Services required for any Scope of Work accepted by Contractor, specifically including without limitation any and all State and Federal DOT, Motor Carrier, IFTA or any other permits/licenses required ("Law(s)"). Contractor agrees to notify Denali immediately of any suspension, cancellation or revocation of any authority, license or permit necessary for Contractor to furnish the services lawfully to Denali. Contractor shall provide documentation to Denali upon demand indicating that Contractor has complied with the FMCSA, including, but not limited to, drug and alcohol use and testing. Contractor shall maintain records to the extent Contractor is required by Law and to the extent required by Contractor's provision of Services. Denali shall have the right to inspect such records upon request. At Denali's request, and without prior notice, Contractor shall permit Denali to inspect Contractor's and/or Denali's equipment, and to determine Contractor's compliance with all Laws; provided however that Denali shall have no duty to perform such inspections. Any inspection by Denali shall not be considered a waiver of Contractor's compliance obligations and liabilities hereunder.

2.5    **Workers' Compensation.** Contractor shall maintain on file with Denali a current certificate of workers' compensation insurance and employers' liability coverage for all drivers and other workers at statutory limits for all states in which Contractor operates. Contractor must list Denali as an additional named insured and/or as an additional loss-payee under such policies.

2.6    **Operation.** During each Scope of Work performed by Contractor pursuant to this Agreement, Contractor shall freely at its sole cost and expense, select, equip, maintain and operate, its equipment in full compliance with all Laws

2

and regulations, and shall keep and maintain the same in good condition at all times. While Denali is entitled to provide Contractor with general guidance to assist Contractor in completing the scope of work to Denali's satisfaction, Contractor is ultimately responsible for directing and controlling the performance of the task and the scope of work, in accordance with the terms and conditions of this Agreement. Contractor shall use its best efforts, energy and skill in its own name and in such manner as it sees fit. Contractor shall direct the physical operation of the equipment and control the details of said work in all respects, in route, rest stops, and points of service and repair, in accordance with all Laws and regulations. Contractor shall not perform any contracted services in a manner in which would be injurious to the reputation and goodwill of Denali. Denali has developed certain procedures for the proper handling of Material and Contractor shall perform Services in such a way as to, at minimum, comply with such procedures while performing Services under this Agreement. If Denali provides Denali Equipment for Contractor's use, Contractor is required to purchase "Trailer Interchange Insurance" and provide evidence of such policy to Denali. If Contractor uses Denali Equipment, Contractor shall also: (a) ensure its proper operation and control; (b) notify Denali immediately of any problems in the operation of Denali Equipment; (c) obtain written authorization from Denali in advance for repairs and/or maintenance of the Denali Equipment in excess of $1000; and (d) for any maintenance and repairs to Denali Equipment managed by Contractor, submit a receipt from the repair facility detailing the repairs or maintenance performed, with such receipt being due to Denali during the month in which the repairs or maintenance were performed. Denali does not make any warranty or representation, express or implied, as to the fitness or condition of the Denali Equipment, including tires, tubes, and brakes. The Contractor shall utilize Denali Equipment at its own risk and hereby waives and releases Denali for any and all loss, liability, obligation, damage, or expense incurred by Contractor resulting from Contractor's use of Denali Equipment.

2.7    **Operating Expenses.** Contractor shall pay all operating and maintenance expenses for its equipment, including but not limited to fuel, fuel taxes, oil, grease, lubrication, tires, non-dispatched empty mileage, registration/permit fees, highway use taxes, detention charges, loading and unloading charges, base plate, accessorial services, drivers' and helpers' wages, and federal, state, and local taxes of any nature including taxes levied against the equipment or against payroll of Contractor's drivers and helpers. If Contractor is utilizing Denali Equipment and the Scope of Work provides for Denali to reimburse the Contractor for fuel, Contractor shall only be entitled to such reimbursement upon presentation of fuel receipts. If the Scope of Work provides for Contractor to be paid on any basis related to mileage, Contractor shall only be entitled to such compensation up on presentation to Denali of a mileage log.

2.8    **Violations, Fines and Forfeitures.** Contractor shall promptly pay all fines or forfeitures in cases where any violation results from the acts or omissions of the Contractor and Contractor shall hold defend, indemnify and hold harmless Denali from any and all liability resulting from such acts or omissions.

2.9    **Owner Contract.** Contractor understands that the Services performed hereunder are a result of a relationship between Denali and Denali's client ("Client"). Contractor assumes toward Denali all the obligations and responsibilities which Denali assumes towards the Client under the contract between Denali and Client ("Client Contract"). Denali shall have the benefit of all rights, remedies and redress against Contractor which Client has against the Denali, in addition to all other remedies available at law, in equity, or provided herein. Upon written request by Contractor, Denali will provide a copy of the Client Contract to Contractor, although Denali may redact certain commercial information related to pricing or other Confidential Information. In the event of a conflict between the terms of the Client Contract and the terms contained in this Agreement, those favorable to Denali will control.

3.0    **Pay.** Denali will pay to Contractor for the services provided by Contractor as described in the Scope of Work as accepted by Contractor, less advances, reimbursements, or other obligations due to Denali, within thirty (30) calendar days after completion of the Scope of Work. Contractor shall receive no payments for operation of the equipment except as authorized by and on behalf of Denali.

4.0    **Deductions from Payment on Settlement.** Denali may withhold amounts otherwise due under this Agreement to cover Denali's reasonable estimate of any costs or liability Denali has incurred or may incur for which Contractor may be

responsible hereunder. Appropriate adjustments to withholdings shall be made when the exact amounts owed hereunder are determined. Denali shall provide Contractor an itemization of the deductions.

**5.0    Liability and Property Damage Insurance.** Contractor shall be solely and fully responsible and liable for all operational aspects of equipment, including Denali equipment, and the performance of all services required to be provided by Contractor pursuant to this Agreement and, it is understood that Denali will not purchase insurance for that purpose. The minimum insurance requirements required to be maintained by Contractor are as follows: (a) insurance provided by a company rated A-9 or better; (b) General Liability and errors and omissions or professional liability insurance covering all of its Services in the amount of $1,000,000 per occurrence; (c) Auto Liability policy or policies of insurance in an amount not less than $1,000,000 combined single limit; (d) the auto liability policy will contain Upset and Overturn Coverage; and (e) Trailer interchange insurance must be maintained in the amount of $60,000. For all such insurance policies, Contractor should list Denali as an additional named insured and/or as an additional loss-payee under such policies. Contractor shall provide to Denali copies of all policies required to be maintained, and a Certificate of Insurance indicating said coverage shall be provided to Denali upon request.

**6.0    Environmental Compliance.** Contractor agrees to the following:

- Contractor shall familiarize themselves with and comply with spill prevention and control plans mandated by Denali, its customer(s), and any Laws. **CONTRACTOR SHALL IMMEDIATELY NOTIFY DENALI OF ANY SPILL.** Contractor shall cooperate with governmental agencies investigating or overseeing any spill or cleanup. As between Denali and Contractor, Contractor shall be fully liable and responsible to clean up and remediate any spill at Contractor's sole cost and expense. In the event Contractor fails to immediately clean up or fully remediate a spill, Denali may, in its sole discretion, undertake the cleanup or remediation and withhold from payment or charge back to Contractor all costs or expenses incurred by Denali, including but not limited to costs internal to Denali.
- Contractor shall communicate with Denali's designated Appointee regarding progress made in providing Services. The Denali Appointee shall be notified immediately of any event which may impact the ability of Contractor to perform Services. These events may include, but are not limited to, equipment breakdowns or accidents, employee injury and adverse weather conditions.
- In cases where Contractor is not providing pick up service and is providing land application only and/or disposal services only for Denali, Denali shall arrange for delivery of Materials to Contractor. Materials shall be delivered to and deposited at the Denali approved and permitted land application or disposal site(s). To the extent Denali has title to such Material(s), such title to Materials held by Denali shall pass to Contractor upon delivery by Denali or its hired contractor.
- In the event Contractor or its employees, agents, or representatives are contacted by Denali's customers, governmental authorities, or other third parties, whether directly or through their representatives, regarding Contractor, Services, customer(s), Materials or any other topic related to this Agreement, Contractor shall immediately report such contact to Denali.
- Contractor shall be responsible for immediately communicating to Denali's Appointee in as much detail as possible with respect to any federal, state and local regulatory inspections, notices of violation, odor complaints, and citizen inquiries.
- Contractor shall notify Denali's Appointee immediately of any act or omission of Contractor which has or may violate any Law. This includes, but is not limited to, over-application of Materials, application of Materials within the buffer zones or restricted areas, and/or spillage of Materials within the buffer zones or the restricted areas.

**7.0    Indemnification by Contractor.** Contractor shall fully indemnify, defend and hold Denali harmless from and against any and all loss, liability, obligation, damage, or expense incurred by Denali resulting from the performance by Contractor, its subcontractors, its and their employees, agents and invitees ("Contractor Group") of the Services associated with, arising from or attributable to this Agreement; any breach, whether willful or accidental, by Contractor Group of any of the terms of this Agreement; any unauthorized or unlawful acts by Contractor Group, including but not limited to, loaded or empty operations on private business premises, criminal acts, infidelity, gross negligence, violations of Law regulating

4

Contractor's activities; any other acts of Contractor Group, including but not limited to violation of rules and regulations of any federal, state, or local government, including any fines or penalties assessed against Denali by third parties for which Contractor Group is responsible under this Agreement; and for any other purpose. The parties specifically acknowledge that Contractor is knowledgeable of the potential liability that is released; that the Contractor is benefiting from the activity which may lead to the potential liability that is released; and that this release and indemnification was fairly and freely entered into. Contractor agrees to take all necessary precautions to prevent injury to any persons (including employees of Denali) or damage to property (including Denali's property) during the term of this Agreement, and shall indemnify, defend and hold harmless Denali, its officers, directors, shareholders, employees, representatives and/or agents from any claim, liability, loss, cost, damage, judgment, settlement or expense (including attorney's fees) resulting from or arising in any way out of injury (including death) to any person or damage to property arising in any way out of any act, error, omission or negligence on the part of Contractor or any contractor employee in the performance or failure to fulfill any Services or obligations under this Agreement.

**8.0    Waiver of Liability.** Denali shall not be liable to Contractor on account of any personal injuries or property damage sustained by Contractor in performance of Services hereunder. Contractor shall indemnify, defend and hold Denali harmless from all liability for personal injuries or property damage directly related to Contractor's performance of Services.

**8.1    Consequential Damages.** NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT OR PROVIDED FOR UNDER ANY APPLICABLE LAW, UNDER NO CIRCUMSTANCES SHALL DENALI BE LIABLE TO ANY PERSON, EITHER IN CONTRACT OR TORT, FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, DIRECT AND INDIRECT LOSS OF PROFITS, LOSS OF BUSINESS OPPORTUNITY, OR LOSS OF PROSPECTIVE REVENUE, RELATING TO THIS AGREEMENT OR TO ANY WORK PERFORMED OR TO BE PERFORMED HEREUNDER, WHETHER OR NOT THE POSSIBILITY OF SUCH DAMAGES HAS BEEN DISCLOSED TO THE OTHER PARTY IN ADVANCE OR COULD HAVE BEEN REASONABLY FORESEEN BY SUCH OTHER PARTY.

**9.0    Confidentiality.** In connection with the performance of Services hereunder, the Contractor may be exposed to Denali's confidential and proprietary information and trade secrets ("Confidential Information"), including, but not limited to, its business operations and processes, production processes, customers, pricing, and marketing plans, whether or not so identified (including, without limitation, this Agreement). Contractor acknowledges that the Confidential Information is Denali's sole, exclusive and extremely valuable property. Accordingly, Contractor agrees to segregate all Confidential Information from information of other companies and agrees not to reproduce any Confidential Information without Denali's prior written consent, not to use the Confidential Information except in the performance of this Agreement, and not to divulge all or any part of the Confidential Information in any form to any third party, either during or after the term of this Agreement, except to Denali employees and Contractor's employees who need to know such Confidential Information in order to perform the Services. Upon termination or expiration of this Agreement for any reason, Contractor agrees to cease using and to return to Denali all whole and partial copies and derivatives of the Confidential Information, whether in Contractor's possession or under Contractor's direct or indirect control, including any computer access nodes and/or codes, and to arrange for the return of such materials by all of Contractor's employees. This covenant shall remain in effect following termination of this contract. Contractor shall not use Denali's name in any advertising or promotional literature or publish any articles relating to Denali, this Agreement or the services hereunder. These obligations shall extend for a period of three (3) years after the termination of this Agreement as to Confidential Information that does not qualify for protection as a trade secret. Trade Secret information shall be protected from disclosure as long as the information at issue continues to qualify as a trade secret.

**10.0    Non-competition. <u>Contractor is defined to include Owner for purposes of this Paragraph</u>.**

**10.1**    Contractor agrees and covenants that it will not, and will not permit any of its employees, contractors, owners, managers, shareholders, agents, officer or directors to, at any time during the term of this Agreement, and for a one

(1) year period following the date of the termination of this Agreement, directly or indirectly, own, be employed by, manage, operate, control, participate in the ownership, management, operation or control of, or be connected with or have any interest in, any person, firm, corporation, partnership, trust or other business or entity (whether as a stockholder, officer, director, employee, agent, security holder, creditor, independent contractor, consultant, or otherwise) that solicits or engages in any business activity with any "Restricted Customer", as hereinafter defined, in any manner which is the same as or substantially similar to the Services provided by Contractor to Denali pursuant to this Agreement.

10.2    For purposes of Paragraph 10, the term "Restricted Customer" shall mean any customer of Denali, Denali's subsidiaries or affiliates, that was the subject of Services pursuant to this Agreement during the Term of this Agreement and for two (2) years after this Agreement ends. If Contractor, or its employees, contractors, owners, managers, shareholders, agents, officer or directors, as applicable, is based in or resides in North Carolina, then "Restricted Customer" shall mean any customer of Denali, Denali's subsidiaries or affiliates, that was the subject of Services pursuant to this Agreement during two (2) years from the date of enforcement of this Section 10, not from the date this Agreement ends.

10.3    If any provision of this Section 10 is held to be unenforceable because of the scope, duration or area of its applicability, the court making such determination shall have the power to modify such scope, duration or area so that this covenant shall remain enforceable and such provision shall then be applicable in modified form.

10.4    Contractor understands and agrees that any breach or violation of this Section 10 will cause irreparable harm to the Denali which may not be adequately remedied by an award for monetary damages, and, accordingly, in the event of any such breach or violation, Denali shall have, in addition to any other remedies at law, the right to an injunction, specific performance or other equitable remedies to prevent violation of Contractor's obligation hereunder. However, nothing contained herein shall be construed as prohibiting Denali from pursuing any other remedies available for any such breach or threatened breach against Denali, which may also include, but are not limited to, contract damages, lost profits and punitive damages.

10.5    If Contractor breaches Paragraph 10.1 and legal action is initiated by Denali to enforce this Agreement or to seek damages for Contractor's violation, Contractor will pay all expenses, including reasonable attorneys' fees and costs, incurred by Denali to establish that breach, to obtain injunctive relief, and/or otherwise to enforce the terms of this Section 10. If under applicable law, the foregoing cannot be enforced without also giving Contractor the right to recover attorneys' fees and costs if deemed the prevailing party, then the foregoing sentence shall not apply and both parties shall bear their own attorney's fees and costs instead.

10.6    If Contractor breaches Paragraph 10.1 of this Agreement and Denali seeks injunctive relief, the time period for Contractor's obligations will be extended by one day for each day of Contractor's violation thereof, up to a maximum of one (1) year, or to the extent permitted by law; however, this extension of time shall be capped so that the extension of time itself does not exceed the original one (1) year restriction, and if this extension would make the restriction unenforceable under applicable law it will not be enforced. This Paragraph 10.6 shall not apply to Contractor if Contractor, or its employees, contractors, stockholders, agents, officer or directors, as applicable, is based in or resides in Georgia.

10.7    Section 10 of this Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas without regard to its principles of conflicts of law. The parties agree that all actions or proceedings that arise out of, are associated with, require the interpretation of, or that are in any way directly or indirectly related to the subject matter covered in Section 10 of this Agreement, shall be tried and litigated exclusively in the courts of the State of Arkansas. This choice of venue is intended by the parties to be mandatory and not permissive in nature. Therefore, the parties hereby waive any right to assert lack of personal jurisdiction or the doctrine of forum non conveniens or a similar doctrine or to object to venue or jurisdiction with respect to any action or proceeding brought in accordance with this Paragraph 10.7. THE PARTIES IRREVOCABLY CONSENT AND AGREE THAT ARKANSAS COURTS HAVE PERSONAL JURISDICTION OVER CONTRACTOR, DENALI AND ANY RELATED AFFILIATE, FOR PURPOSES OF

LITIGATING ANY DISPUTE, CONTROVERSY, OR PROCEEDING CONCERNING THE MATTERS DESCRIBED IN THIS AGREEMENT.

    **10.8**    This Section 10 shall not apply to Contractor if Contractor, or its employees, contractors, stockholders, agents, officer or directors, as applicable, is based in or resides in Oklahoma. This Section 10 shall also not apply to Contractor's employees who reside in Missouri and provide secretarial or clerical services.

**11.0    Independent Contractor Status.** The parties expressly agree that the relationship of Contractor to Denali pursuant to this Agreement shall be that of independent contractor. Nothing in this Agreement nor the Services rendered hereunder is meant, or shall be construed in any way or manner, to create between them a relationship of employer and employee, principal and agent, partners or any other relationship other than that of independent parties contracting with each other solely for the purpose of carrying out the provisions of the Agreement. Contractor is not the agent of Denali and is not authorized and shall not have the power or authority to bind Denali or incur any liability or obligation, or act on behalf of Denali. At no time shall Contractor represent that it is an agent of Denali, or that any of the views, advice, statements and/or information that may be provided while performing the Services are those of Denali. If Contractor is reclassified as an employee by any government agency, judge, jury, or arbitrator, Contractor agrees that any right to Denali benefits shall be waived to the full extent allowable by law. Such waiver is a material term of this Agreement and not based on the classification of the Contractor as an independent contractor. Because Contractor and Contractor's agents, servants, and employees are not employees of Denali, they are not eligible for or subject to: employment taxes, income tax withholdings, or any employee benefits provided to Denali employees. Contractor is solely responsible for payment of federal, state, local, and Social Security taxes. Except as otherwise required by law, all withholdings, liabilities, and contributions shall be solely Contractor's responsibility. It is further agreed that if, for any reason, Denali shall be held liable for or required to pay the obligations (including without limitation, attorney's fees, back wages, liquidated damages, penalties or interest) of the Contractor as to Contractor or its agents, servants or employees, including but not limited to wages, federal, state or local taxes, or other similar Contractor responsibilities, Contractor shall reimburse, indemnify, and hold Denali harmless for the amounts thereof. Contractor shall provide such certification of its status as Denali may reasonably require.

**12.0    Interchange Agreement.** Denali may permit Contractor's use of Denali owned trailers, containers, or other equipment (herein collectively referred to as "Denali Equipment") by Contractor's employees for the express purpose of performing the Services to further Denali's business interests. Contractor represents and warrants it is authorized, capable, and willing to utilize Denali Equipment to perform the Services.

- **Use –** Contractor agrees that Denali Equipment shall not be used by the Contractor for any purpose other than to benefit Denali through the Services outlined herein and shall not be used, loaned or leased out to any person not an employee of Contractor, without Denali's express written consent.
- **Risk of Loss or Damage –** Contractor assumes all risks of damage or loss of Denali Equipment, whether or not covered by Contractor's insurance, while such are in Contractor's possession. Denali Equipment is deemed to be in the Contractor's possession until such time that a Denali authorized representative formally reclaims it. Contractor will use all due diligence and best practices to protect Denali Equipment from damage or loss. In the event Denali Equipment is lost or damaged beyond repair; Contractor will immediately notify Denali and pay Denali the equivalent of the Denali Equipment current replacement cost value. Contractor will immediately notify Denali of any accidents involving Denali Equipment. Contractor will immediately notify Denali of any and all damage that occurs to Denali's Equipment as soon as the Contractor becomes, or should have become, aware of the damage. Failure to timely notify Denali will result in Contractor being liable for all indirect and consequential damages. Denali may withhold or offset any sums owed to Contractor under this or any other agreement to ensure Contractor's timely compliance with this Section 12.

**13.0    Rider Policy.** Contractor shall not permit any third parties or non-employee passengers ("Passengers") in any Contractor owned vehicles, Denali Equipment or other equipment while conducting Services for Denali. Contractor shall

indemnify, defend and hold Denali and any Client harmless against any and all claims, including but not limited to punitive or consequential damages, arising out of or related to Contractor's breach of this Section 13.

**14.0    Subcontractors.**  Contractor may not delegate or subcontract any of its obligations hereunder to any third party subcontractor without written consent from a Denali officer authorized to give such consent.  Each proposed subcontractor shall be submitted by Contractor to Denali for prior consent and Denali may reject and/or remove any subcontractor at its sole discretion and at Contractor's sole expense.  Contractor shall require each subcontractor, to the extent of Services to be performed by the subcontractor, to be bound to Contractor by the terms of this Agreement.  Nothing herein, including approval of subcontractors by Denali, changes that Contractor is responsible for all Services and other obligations hereunder, including that part of the Services performed by subcontractors.        MSN            initial acknowledgment

**15.0    Choice of Law, Venue, Saving Clause.**  This Agreement supersedes all previous agreements between Denali and Contractor, if any, and shall be deemed to have been entered into at Denali's principal place of business at Russellville, Arkansas.  This Agreement shall be governed by the laws of the State of Arkansas, except as otherwise provided for in Section 10.0.  Exclusive venue for any disputes arising under this Agreement shall be in the state courts located in Russellville, Arkansas, except as otherwise provided for in Section 10.0.  If any provision of this Agreement (including Addenda) is found by any court to be void or unenforceable in whole or in part, this determination shall not affect the validity of the remainder of the Agreement, including any other provision.  Each provision of this Agreement is separable from every other provision and constitutes a separate and distinct covenant.  The parties agree, however, that should a court construing this Agreement determine that any provision of the Agreement is overbroad or unenforceable, the court shall reform any overbroad or unenforceable provision in a manner that provides Denali with the greatest level of rights and protection permissible by applicable law.  EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY.

**16.0    Entire Agreement, Modification, Waiver.**  This Agreement represents the entire Agreement between the parties.  The Agreement may not be modified, amended, changed, or supplemented in any way except by written Agreement signed by both parties.  The waiver by either party of a breach or violation of any provision of this Agreement shall not constitute a waiver of any subsequent breach or other breach or violation.  This Agreement supersedes and/or replaces any prior contracts or agreements between the parties.  This Agreement shall extend to and be binding upon the parties hereto and their respective successors and assigns; provided, however, that this Agreement shall not be assignable by the Contractor without the prior written consent of an authorized officer of Denali.

**17.0**    This Agreement may be executed in two or more separate counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Signatures on counterparts of this Agreement that are transmitted electronically shall be deemed effective for all purposes.  A signature page in "PDF" format or an electronic signature to this Agreement shall be deemed an original and binding upon the party against which enforcement is sought.


[REMAINDER INTENTIONALLY BLANK – SIGNATURES ON FOLLOWING PAGE]

8

IN WITNESS WHEREOF, the parties have executed this Agreement contract on the date set forth above, and this, Agreement shall be considered to be binding upon the parties and shall remain in full force and effect unless and until canceled according to the terms herein.

Marlin Nolt Trucking, LLC

By: _____

Name: **Marlin S. Nolt**

Title: **President**

Address: 752 Nottingham Road Peach Bottom, PA 17563

Denali Water Solutions, LLC

By: _____

Name: _____

Title: _____

Address: 3308 Bernice Ave, Russellville, AR 72802


Owner in their individual capacity agrees to be bound by Paragraph 10 Non-Competition:

By: _____

Name: **Marlin S. Nolt**

Address: 752 Nottingham Road, Peach Bottom, PA 17563

**EXHIBIT A - Scope of Work:**

1. Services:

2. Pay:

3. Denali Appointee: _____ (The Appointee may be changed by Denali providing notice to Contractor)

2022 CONTRACT



## INDEPENDENT CONTRACTOR INFORMATION FORM

Please complete and return this form prior to the commencement of any contractor service. Other Items listed on page two must also be attached.

Today's Date 05/24/2022                    Service Area Manager:_____

Full Legal Name of Contractor Marlin Nolt Trucking, LLC

Point of Contact/Owner (if Contractor is a legal entity) Ben Flahart

Mailing Address P.O. Box 248 Peach Bottom, PA 17563

Telephone Number 717-629-7244

Email Address mnolttrucking@gmail.com

Active US DOT Number 1334036        IFTA Number:_____ MC Number: 592416

Current Insurance Company Protective Insurance Company

Policy Number AN-100027-01                    Expiration Date 02/23/2023

Insurance Company Telephone Number 315-703-1338

Equipment Description: (Truck, Dump Truck, Farm Equipment, etc.)
Truck

Denali Water Solutions Equipment/Trailers will be used:  YES /  NO

**ACORD®**

## CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 5/24/2022 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Jennifer Butler | | |
|---|---|---|---|
| Haylor, Freyer & Coon, Inc. P.O. Box 4743 Syracuse NY 13221 | PHONE (A/C, No, Ext): 315-703-1338 | | FAX (A/C, No): 315-362-5747 |
| | E-MAIL ADDRESS: certificates@haylor.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Protective Insurance Company | | 12416 |
| INSURED                                        MARLINNOLT Marlin Nolt Trucking, LLC 184 Pilottown Rd Peach Bottom, PA 17563 | INSURER B : Upland Specialty Insurance Company | | 16988 |
| | INSURER C : Allianz Global Risks US Ins. Co. | | 35300 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES        CERTIFICATE NUMBER: 268115522        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | Y | Y | NAN10002701 | 2/23/2022 | 2/23/2023 | EACH OCCURRENCE | $1,000,000 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | X POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | Y | Y | NAN10002701 | 2/23/2022 | 2/23/2023 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  X SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY  X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X Physical Dam | | | | | | Comp $2,500 | $ Coll $2,500 |
| B | X UMBRELLA LIAB  X OCCUR | | | USXTL0094622 | 2/23/2022 | 2/23/2023 | EACH OCCURRENCE | $1,000,000 |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $1,000,000 |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY                                     Y/N ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE  ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | Motor Truck Cargo Trailer Interchange | | | MXI93086577 | 2/23/2022 | 2/23/2023 | $250,000 Limit $60,000 Limit Reefer Included | $1,000 Deductible $2,500 Deductible |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Certificate holder shown below is named as additional insured with respects
CA04441013 - Waiver of Transfers Rights of Recovery Against Others to us (Waiver of subrogation)
CA20481013 - Designated Insured for Covered Auto Liability Coverage
CG24040509 - Waiver of Transfer Rights of Recovery
CG20260413 Additional Insured Designated Person or Organization

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Denali Water Solutions, LLC 3308 Bernice Ave Russellville AR 72802 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE   _John D. Freyer, Jr._ |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)        The ACORD name and logo are registered marks of ACORD



Penn Medicine
Lancaster General Health

To:   Marlin Nolt Trucking                                    Fax:
      184 Pilottown Rd

      Peach Bottom, PA 17563

## Certification of Enrollment in Random Selection          00001373
   2/01/2021    6:43AM                              Generated on:   2/01/21

| | |
|---|---|
| Number of your employees eligible for selection: | 38 |
| Number of your employees selected for Drug testing only: | 5 |
| Number of your employees selected for Alcohol testing only: | |
| Number of your employees selected for dual Drug/Alcohol testing: | 1 |
| Total number of your employees selected for testing: | 6 |
| Number of your employees reserved as Alternates for Drug and/or Alcohol Testing: | |
| Total number of participants in this random pool: | 728 |
| Total number of participants selected from this random pool: | 100 |
| Total percentage of eligible participants selected from this random pool: | 13.74% |

This document certifies that your company's employees are subject to computer-
generated random selections for alcohol and/or drug testing.  You should store this
document with your other permanent drug testing records.

_Authorized Signature_

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

## AGREEMENT

This Agreement ("Agreement"), entered into this 6th day of February, 2023, is by and between Denali Water Solutions LLC, a Delaware limited liability company, with offices located in Russellville, Arkansas and its affiliates (collectively "Denali"); Benjamin C. Flahart ("Flahart"), whose address is 176 Puseyville Road, Quarryville, Arkansas; Marlin Nolt Trucking, LLC ("Marlin"), whose address is 752 Nottingham Road, Peach Bottom, Pennsylvania and all entities in which Flahart owns a membership or controlling interest (collectively "Flahart Parties"). Denali, Flahart and Marlin shall hereinafter collectively be referred to as the "Parties."

WHEREAS, Denali is engaged in the business of transporting, managing and disposing of municipal biosolids and other residuals ("Material"); and

WHEREAS, Flahart, individually and in his representative legal capacities on behalf of a variety of legal entities, has entered into certain legal documents with Denali whereby the Flahart Parties have been and will continue to deliver contractor services to or on behalf of Denali, such as providing and operating heavy equipment, vehicles and working to facilitate the transportation, delivery and/or management of Materials as a non-employee independent contractor; and

WHEREAS, Marlin and Denali entered into a Subcontractor Agreement dated May 24, 2022 ("Subcontractor Agreement") the terms of which are incorporated herein by reference; and

WHEREAS, Flahart, individually, and Denali entered into a Farm AD Feed Stock Agreement dated August 15, 2020 ("Farm Agreement") and a Mutual Confidentiality Agreement dated February 3, 2022 ("Confidentiality Agreement"), the terms of both being incorporated herein by reference, with the Subcontractor Agreement, Farm Agreement and Confidentiality Agreement being hereinafter collectively referred to as the "Denali Agreements"; and

WHEREAS, the parties wish to confirm and reaffirm the terms and provisions of the Denali Agreements and to also extend and incorporate the terms and provisions of this Agreement, to the extent not already accomplished, to the Denali Agreements and any new contracts and agreements to be entered into in the future between some or all of the Parties.



EXHIBIT

4

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

NOW THEREFORE, THE PARTIES WITNESSETH:  That for One Dollar ($1.00) and other good and valuable consideration, the sufficiency and receipt of which is hereby expressly acknowledged, the Parties agree as follows:

1. The parties incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Agreement.

2. The Subcontractor Agreement shall be binding upon and enforceable against Flahart, individually, as if Flahart was named as a party therein and executed same.

3. The Farm Agreement and Confidentiality Agreement shall be binding upon and enforceable against all Flahart Parties, as if each was named as a party therein and executed same.

4. Scope of Work: Denali intends to haul approximately 4 loads per day or 20 loads per week to Flahart's storage tank located near Greensboro, MD for a tipping fee of $380 per tanker load.  Denali also intends to haul an additional 5 loads per day between Flahart's storage tanks located in Cecil County Maryland and Lancaster County Pennsylvania for the current rates listed below.

| Description | Rate | Unit of Measure |
|---|---|---|
| Tyson to Kilby. | $0.05 | Gallon |
| All other loads. | $0.03 | Gallon |

A. This Scope of Work is contingent upon Denali maintaining its current customers at the rates in effect at the time of the execution of this Agreement and also subject to any Force Majeure events.  "Force Majeure" shall mean causes that are beyond the reasonable control and without the fault or negligence of the party claiming Force Majeure and that could not have been avoided or prevented by reasonable foresight, planning or implementation of the party claiming Force Majeure.  Such causes shall include, but not be limited to, acts of God, epidemic, pandemic, war (declared or undeclared), acts of terrorism, insurrections and political disturbances, hostilities, strikes or lockouts, labor or equipment shortages,

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

riots, fire, storms, change in regulation or law and interference or hindrance by any governmental authority.

5. <u>Non-competition</u>: The Flahart Parties agree and covenant that they will not, directly or indirectly, own, be employed by, manage, operate, control, participate in the ownership, management, operation or control of, or be connected with or have any interest in, any person, firm, corporation, partnership, trust or other business or entity (whether as a stockholder, officer, director, employee, agent, security holder, creditor, independent owner, consultant, or otherwise) that solicits or engages in any business activity with any "Restricted Customer", as hereinafter defined, in any manner which is the same as or substantially similar to the services provided by Denali to its customers. For this purpose, the term "Restricted Customer" shall mean any current or previous customer of Denali's for which Denali, or any of its affiliates, provides services to, including but not limited to transportation, management, and disposal of residual services. Such covenants shall remain in full force and effect (a) during the term of this Agreement, the Denali Agreements or any other contracts or agreements entered into in the future with Denali and for a two (2) year period following the date of termination of any such contracts or agreements and (b) within a geographical area of thirty (30) miles of any property for which the Flahart Parties are providing contractor services to Denali or on its behalf to third-party customers.  If any of the provisions of this paragraph is held to be unenforceable because of the scope, duration or area of its applicability, the court or arbitrator making such determination shall have the power to modify such scope, duration or area so that this covenant shall remain enforceable and such provision shall then be applicable in modified form. In the event the Flahart Parties shall violate any non-competition provision of this Agreement as to which there is a specific time period during which Flahart Parties are prohibited from taking certain actions or from engaging in certain activities, as set forth in such provision, then such violation shall toll the running of such time period from the date of such violation until such violation shall cease and shall extend the time period set for in this Agreement so long as the Flahart Parties remain in violation.

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

6. <u>Non-circumvent</u>. Denali may, in accordance with this Agreement, introduce or connect Flahart Parties with potential business transaction sources or clients (collectively "Clients"). Flahart Parties agree to not circumvent Denali and shall maintain full disclosure with regard to any and all communications and correspondence, in particular with regards to contract negotiations, including all discussions regarding fees, with any Clients. As such, Flahart Parties hereby agree not to circumvent, avoid, bypass, or obviate, directly or indirectly, the intent of this Agreement through any transaction, transfer, pledge, agreement, recapitalization, loan, lease, assignment or otherwise. The Flahart Parties, (and affiliates of such parties) agree that they will not attempt, directly or indirectly, to contact parties first introduced to the Flahart Parties by Denali or contact or negotiate with any confidential source, except through Denali or with the expressed written consent of Denali as to each such contact.

7. <u>Non-Disclosure</u>.

   A. Confidential Information Defined. For purposes of this Agreement, "Confidential Information" means any data or information, in whatever medium provided, whether modified or unmodified by the Flahart Parties, related to Denali or its affiliates, including, but not limited to, technical information, financial information, methods of doing business, know-how, trade secrets, business plans and models, pricing and cost information, contract terms and conditions, marketing methods and strategies, names of suppliers, customers, creditors or partners, proposed transactions, market projections, names and compensation of employees and consultants, software programs, other confidential and proprietary information relating to a Denali project or otherwise that should reasonably be recognized as confidential by the Flahart Parties, and any data or information, in whatever medium provided, whether modified or unmodified by the Flahart Parties, that is expressly designated "Confidential". The term "Confidential Information" also includes (a) the fact that such data or information has been or will be made available to or is being or will be inspected or evaluated by the Flahart Parties or their representatives, (b) the fact that discussions or negotiations are taking place concerning a Denali

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

project or other transactions between the parties, and (c) any of the terms, conditions or other facts with respect to a Denali project or other transactions between the parties, including the status or existence thereof. This Agreement will apply to any Confidential Information previously shared between the parties and/or between a party and the other party's representatives.

B. Exclusions from Definition. The term "Confidential Information" as used herein does not include any data or information that (a) through no fault of or failure by the Flahart Parties has become generally known to the public; (b) has been approved for public release by a written authorization by Denali; or (c) is independently developed by the Flahart Parties without use, directly or indirectly, of the Confidential Information received from the Denali.

C. Nondisclosure Obligation. The Flahart Parties shall keep such Confidential Information, including any portion of the Confidential Information which has been incorporated into notes, memoranda, analyses, compilations, studies, reports or other documents or records prepared by the Flahart Parties or their representatives, confidential and shall not disclose such Confidential Information, in whole or in part, to any person other than its representatives who need to know such Confidential Information in connection with the Flahart Parties evaluation, negotiation or performance with respect to a Denali project (it being agreed and understood that such representatives shall be informed by the Flahart Parties of the confidential nature of the Confidential Information and shall be required by the Flahart Parties to agree to treat the Confidential Information as if they were bound by the terms of this Agreement), except with the prior written consent of Denali hereto or as otherwise permitted hereunder. The Confidential Information shall be used by the Flahart Parties solely in connection with its evaluation of a Denali project and shall not be used for the Flahart Parties own benefit or for any other purpose.

D. Standard of Protection. For the purpose of complying with the obligations set forth herein, Flahart Parties shall use efforts commensurate with or exceeding those which the majority of persons in the industry of the Flahart Parties employ

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

for the protection of corresponding sensitive information, and the Flahart Parties shall not be liable for any inadvertent disclosure of Confidential Information provided that (a) it has used substantially the same degree of care to avoid disclosing such Confidential Information as the majority of persons in the industry of the Flahart Parties employ for information of like importance, and (b) upon discovery of any inadvertent disclosure it shall use commercially reasonable efforts to prevent further disclosure of such Confidential Information.

E.  Compliance with Legal Process. If the Flahart Parties are requested or required by law (including but not limited to, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process or, in the opinion of counsel for such party, by federal or state securities or other statues, regulations or laws) to disclose any Confidential Information, the Flahart Parties shall, to the extent permitted by law, promptly notify Denali of such request or requirement prior to furnishing any Confidential Information so that Denali may seek an appropriate protective order and/or waive compliance with the terms of this Agreement. In any event, the Flahart Parties will furnish only that portion of the Confidential Information which, in the opinion of competent legal counsel for the Flahart Parties, it is legally required to furnish.

F.  Ownership; Return of Confidential Information. All Confidential Information (including tangible copies and computerized, electronic or other versions thereof) shall remain the property of Denali. Within thirty (30) days following the receipt of a written request referencing this Agreement from Denali furnishing Confidential Information hereunder the Flahart Parties shall, at its option, (a) return to the furnishing party all materials (including tangible copies and computerized, electronic or other versions thereof) containing or embodying the Confidential Information received from or on behalf of Denali, or (b) destroy all copies of the Confidential Information in the possession of the Flahart Parties or its representatives, with a written certification that all such

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

materials in the Flahart Parties (or its representatives', as applicable) possession have been destroyed. Notwithstanding the immediately preceding sentence, this paragraph shall not require the Flahart Parties to destroy or permanently delete any archival backup copies of electronic files which may be generated in the normal course of such Flahart Parties' records retention/management process. The Flahart Parties and their respective representatives nevertheless shall continue to be bound by their obligations of confidentiality hereunder with respect to any such retained Confidential Information.

G. No Representations. The Flahart Parties acknowledge that Denali is not making nor has it made any representation or warranty regarding any of the Confidential Information or its accuracy or completeness and Denali shall have no liability to the Flahart Parties regarding the use of or reliance upon Confidential Information furnished under this Agreement. Nothing herein shall be construed as implying any contractual relationship between the Parties except as otherwise set forth in this Agreement or otherwise.

8. Independent Owner Status: It is expressly agreed that the relationship of any of the Flahart Parties to Denali pursuant to this or any other Agreement shall be that of an independent contractor. It is acknowledged by the Parties that neither the Flahart Parties, nor any of their employees, shall be deemed to be agents, servants, or employees of Denali for any purpose whatsoever.

9. Remedies for Breach. The Flahart Parties acknowledge that a breach or threatened breach of this Agreement may result in irreparable injury to Denali for which money damages may not be a sufficient remedy and agree that Denali shall be entitled to seek immediate injunctive or other equitable relief to remedy or forestall any such breach or threatened breach. Such remedy shall not be deemed to be the exclusive remedy for any breach of this Agreement but shall be in addition to all other rights and remedies available at law or in equity. The Flahart Parties shall be liable to Denali for any damages, costs and expenses, including reasonable attorney's fees, related to Denali's enforcement of this Agreement.

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

10. <u>No Waiver</u>. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

11. <u>No Obligation</u>. Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement regarding any Denali project.

12. <u>Termination</u>. Denali may terminate this Agreement at any time by written notice to the Flahart Parties specifically referencing this Agreement; however, the obligations of the Flahart Parties to maintain the confidentiality of the Confidential Information it has received under this Agreement shall continue for a period of five (5) years after such termination; provided that, all trade secret information, including business and financial records, shall be safeguarded by the Flahart Parties as required by this Agreement in perpetuity or to the extent provided under applicable law.

13. <u>Governing Law/Venue</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Arkansas, without regard to its choice of law provisions. The parties agree and submit to the state and federal courts located in or nearest to Pope County, Arkansas, in the event any action or proceeding is commenced by either party arising from, related to or in connection with this Agreement, and hereby waive any objection to the laying of venue in any such courts.

14. <u>Attorneys' Fees</u>. The substantially prevailing party in any litigation or other proceeding brought to enforce or interpret the terms of this Agreement shall be entitled to its court costs, reasonable attorneys', and expenses in addition to any other damages and relief allowed by law. For purposes of this Agreement, 'substantially prevailing party' is the party which successfully prosecutes or defends and prevails on the main issues, even if not necessarily to the extent of its original contentions.

15. <u>Severability</u>. If any one or more provisions of this Agreement is determined to be invalid, illegal or unenforceable in any respect, the remaining provisions of this

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

Agreement shall remain in effect and shall not be affected by such invalidity, illegality or unenforceability.

16. <u>Authority</u>.  Each person signing this Agreement, individually or on behalf of a legal entity represents and warrants that (a) he or she is duly authorized and has legal capacity to execute and deliver this Agreement; (b) the execution and delivery of the Agreement and the performance of either party's obligations hereunder have been duly authorized and (c) that the Agreement is a valid and legal agreement binding on the Parties and is enforceable in accordance with its terms.

17. <u>Prior Agreements</u>.  In the event there are prior agreements between the Parties (or their representatives, as applicable) and there is any conflict between such prior agreement(s) and this Agreement, then the language which would impose more restrictions or create a more confidential situation shall prevail.

18. <u>Miscellaneous</u>.  This Agreement: (a) may not be amended or modified except by a writing signed by all parties; (b) inures to the benefit of and is binding upon each party and its heirs, successors, administrators and permitted assigns; (c) may not be assigned or the obligations of the parties delegated without the written consent of the other party; (d) along with any prior written agreements described above constitutes the entire agreement of the parties with respect to its subject matter; and (e) may be executed in counterparts.

[SIGNATURES ON FOLLOWING PAGE – REMAINDER INTENTIONALLY BLANK]

DocuSign Envelope ID: BA563918-CAC6-42DC-B20A-E0A8BA063E7C

EXECUTED on the date set forth in the introductory paragraph of this Agreement.

Denali Water Solutions LLC,
a Delaware limited liability company

By: _Charlie Golden_____
4FF00CCAD8374A7...
Name  Charlie Golden

Title  GM Mid-Atlantic

BF     Executive Vice President - Nortl

Marlin Nolt Trucking, LLC,
a Pennsylvania limited liability
company

By: _Benjamin Flahart_____
5FC98DD37495400...
Name  Benjamin Flahart

Title  partner

_Benjamin Flahart_____
Benjamin Co. Flahart
Individually



**MCALLISTER
DETAR
SHOWALTER
& WALKER**

Brendan S. Mullaney
bmullaney@mdswlaw.com
(410) 820-0250 (Direct)

May 31, 2024

***VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED***
Denali Water Solutions, LLC
c/o Patricia McArdle, Senior Counsel
3308 Bernice Avenue
Russellville, Arkansas 72802

Re:    Notice of Termination of all Contracts and Agreements

Ms. McArdle:

This letter constitutes written notification of immediate termination of all existing agreements and contracts by and between Denali Water Solutions, LLC and any of its affiliates and subsidiaries (collectively, "Denali") and Benjamin C. Flahart, Marlin Nolt Trucking, LLC, and Hartland Holdings, LLC, including any of their affiliates, employees, subsidiaries, parent companies, or related organizations (collectively, "Contractor"). Any and all existing agreements by and between Contractor and Denali are hereby terminated, including but not limited to: (1) the Subcontractor Agreement by and between Denali and Benjamin C. Flahart and Marlin Nolt Trucking dated May 24, 2022 (the "Subcontractor Agreement"); (2) the Mutual Confidentiality Agreement by and between Benjamin C. Flahart and Denali and dated February 3, 2022 (the "Confidentiality Agreement"); (3) the Farm AD Feed Stock Agreement by and between Benjamin C. Flahart and Denali dated August 15, 2020 (the "Feed Stock Agreement"); and (4) the Agreement by and between Benjamin C. Flahart, Marlin Nolt Trucking, LLC and Denali dated February 6, 2023 (the "2023 Agreement").

While there are no ongoing services being performed by Contractor for Denali, the Feed Stock Agreement and Subcontractor Agreement require thirty (30) and fourteen (14) days' notice, respectively, prior to termination of services. If there are any ongoing services that Contractor is not aware of, Contactor must be made aware of them immediately. All other agreements by and between the parties are hereby terminated effective immediately.

Please contact me directly should you have any questions.

Sincerely,

Brendan S. Mullaney

**EXHIBIT**

**5**



220 South Commerce Ave.
Russellville, Arkansas 72801
479-498-0500

Date of Notice: April 18, 2024

UPS Overnight #: 1ZR76R951390664739
Benjamin C. Flahart
176 Puseyville Road
Quarryville, PA 17566

UPS Overnight #: 1ZR76R951393819941
Marlin Nolt Trucking, LLC
Attn: Benjamin C. Flahart, Partner
752 Nottingham Road
Peach Bottom, PA 17563

Re: **Cease and Desist**

Dear Mr. Flahart:

As you know, you, individually ("Flahart"), and Marlin Nolt Trucking, LLC ("Marlin") (collectively, the "Flahart Parties") entered into an Agreement on February 6, 2023 (the "Agreement") with Denali Water Solutions LLC ("Denali"). The purpose of this letter is to notify you formally of your continuing legal and contractual obligations to Denali. For the purposes of this letter, all capitalized terms that are not otherwise defined herein shall maintain the same definition as given in the Agreement.

Per Section 5 of the Agreement, *Non-competition*, the Flahart Parties agree that they will not solicit or engage, directly or indirectly, "in any business activity with any 'Restricted Customer,' as hereinafter defined, in any manner which is the same as or substantially similar to the services provided by Denali to its customers. For this purpose, the term 'Restricted Customer' shall mean any current or previous customer of Denali's for which Denali, or any of its affiliates, provides services to, including but not limited to transportation, management and disposal of residual services. Such covenants shall remain in full force and effect (a) during the term of this Agreement, the Denali Agreements and any other contracts or agreements entered into in the future with Denali and for a two (2) year period following the date of termination of any such contracts or agreements and (b) within a geographical area of thirty (30) miles of any property for which the Flahart Parties are providing contractor services to Denali or on its behalf to third-party customers."

It has come to our attention that you are now in breach of the contractual obligations cited above. Specifically, upon information and belief, the Flahart Parties are pursuing opportunities with Denali Restricted Customers for the purpose of transporting, delivering and/or managing Material.

Per Section 9 of the Agreement, *Remedies for Breach*, "The Flahart Parties acknowledge that a breach or threatened breach of this Agreement may result in irreparable injury to Denali, for which monetary damages would not be a sufficient remedy and agree Denali shall be entitled to seek immediate injunctive or other equitable relief to remedy or forestall any such breach or threatened breach. Such remedy shall not be deemed to be the exclusive remedy for any breach of this Agreement but shall be in addition to all other rights and remedies available at law or in equity. The Flahart Parties shall be liable to Denali for any damages, costs and expenses, including reasonable attorney's fees, related to Denali's enforcement of this Agreement."

**EXHIBIT**

_____6_____

Waste Should Not ... aliWater.com



220 South Commerce Ave.
Russellville, Arkansas 72801
479-498-0500

Denali intends to pursue any and all necessary legal measures unless the Flahart Parties agree immediately to cease and desist contacting and soliciting, either directly or indirectly, any customer of Denali, as required by the Agreement. Please be advised that Denali has a contractual right to notify third parties, including its customers, of the continued contractual obligations owed to Denali. If any of these obligations is breached, Denali may seek all legal and equitable relief available under the applicable law, including a restraining order and attorney's fees.

In addition, Denali reserves the right to assert additional causes of action if, upon further investigation, it is revealed that the Flahart Parties are violating any other contractual obligations under the Agreement; however, we hope that litigation will not be necessary.

Please confirm your compliance by April 25, 2024, with a written communication that you have received this notice and will cease all communications with Denali customers as required under the Agreement, effective immediately. In the event you fail to comply, Denali reserves the right to seek legal remedy by any means available.

Please do not hesitate to contact me if you have any questions.

Sincerely,

Patricia
McArdle

DN: cn=Patricia McArdle, o,
E=patricia.mcardle@
denaliwater.com
Reason: I am the author of this
document
Location:
Date: 2024.04.18 17:02:51-

Patricia McArdle
Senior Counsel
patricia.mcardle@denaliwater.com

Waste Should Not Be Wasted  |  www.DenaliWater.com